UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TRACEY DAVID JOYNER**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 17-10040**

**WARDEN ROBERT TANNER, ET AL.**                            **SECTION: "A"(1)**

**REPORT AND RECOMMENDATION**

Plaintiff, Tracey David Joyner, a state prisoner, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983.[1] Since filing suit, he has repeatedly amended and supplemented his complaint.[2] Despite the volume of his filings, his primary claim is relatively straightforward: he alleges that he was intentionally "falsely diagnosed" with Crohn's disease and prescribed medication which caused him to suffer various unpleasant side effects. In his many rambling amendments and supplements to his original complaint, he appears to reiterate that original claim and assert new claims that medical providers are continuing to inappropriately treat him for Crohn's disease and that prison officials are illegally retaliating against him for bringing this lawsuit.

On November 20, 2017, the Court held a Spears hearing in this matter. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e)

---

[1] Rec. Doc. 1.
[2] Rec. Docs. 7, 8, 9, 10, 11, 12, 16, and 17.

motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

Based on plaintiff's complaint and Spears hearing testimony, the Court finds that he is making the following allegations regarding his claims of intentional misdiagnosis and incorrect medical treatment:

Plaintiff alleges that, in 2011 or 2012, he was intentionally misdiagnosed with Crohn's disease by Dr. Casey McVea, the prison physician, and prescribed unnecessary and harmful medication.  However, when plaintiff had a colonoscopy performed in Bogalusa in 2013 or 2014, the female doctor who performed the procedure purportedly told him that he did not in fact have – and had never had – Crohn's disease.  Nevertheless, Dr. McVea disagreed and continued to prescribe medication for the condition.  After Dr. McVea left his job at the prison in 2017, his replacements have continued to prescribe the medication despite plaintiff telling them that he does not have Crohn's disease.  He alleges that this medication has caused him to suffer unpleasant side effects and various medical problems.

After the Spears hearing, the Court ordered production of all of plaintiff's medical and grievance records from the prison.  Those records, which total approximately two thousand pages, have been filed into this federal record,[3] and copies were furnished to plaintiff for his use in this proceeding.

## I.  Motion for Partial Voluntary Dismissal

Plaintiff recently filed a motion requesting that his claims against the following eight defendants be dismissed:  Laura Buckley; Theresa Knight; Dr. Robert Cleveland; Ernestine Smith; Kenton Smith; Cheryle Barber; Josh Miley; and Judy Tullus.[4]

---

[3] Rec. Doc. 25.
[4] Rec. Doc. 18.

2

Subject to exceptions not applicable in this case, the Federal Rules of Civil Procedure provide that "the plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment...." When a *pro se* plaintiff seeks dismissal in a situation in which Rule 41(a)(1)(A)(i) would be applicable, the fact that he fails to cite that rule or correctly style the notice of dismissal is of no significance. See Carter v. United States, 547 F.2d 258, 259 n.2 (5th Cir. 1977).

The United States Fifth Circuit Court of Appeals has noted that Rule 41(a)(1)(A)(i) "means what it says" and, therefore, "a plaintiff has an *absolute right* to dismiss a lawsuit before the defendant has filed an answer or summary judgment motion." Id. at 259 (emphasis added). When a plaintiff has filed a proper notice of dismissal, a court has "no power or discretion to deny [plaintiff's] right to dismiss or to attach any condition or burden on that right." Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir. 1976).

In this lawsuit, the defendants have filed no answers or motions for summary judgment. Therefore, pursuant to Rule 41(a)(1)(A)(i), plaintiff is entitled to voluntarily dismiss his claims against Laura Buckley, Theresa Knight, Dr. Robert Cleveland, Ernestine Smith, Kenton Smith, Cheryle Barber, Josh Miley, and Judy Tullus. Accordingly, plaintiff's motion should be granted and his claims against those defendants should be dismissed without prejudice.

Additionally, acting *sua sponte*, the Court should dismiss plaintiff's claims against the remaining defendants for the following reasons.

## II. Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations

4

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint, as amended,[5] and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, plaintiff's claims against the remaining defendants be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

### A. Medical Claims

As noted, the primary claims asserted herein are that Dr. Casey McVea intentionally "falsely diagnosed" plaintiff with Crohn's disease and that Dr. McVea and the other prison medical personnel have treated plaintiff – and continue to treat him – with unnecessary medication for that condition, causing him to suffer various unpleasant side effects.

Of relevance to those claims are the records concerning plaintiff's 2017 administrative grievance which was designated RCC ARP #2017-694. On October 9, 2017, Warden Tanner denied that grievance at Step One of the Administrative Remedy Procedure, stating:

> Response to request dated 09/09/2017, received in this office on 09/18/2017.

---

[5] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

> Your complaint has been reviewed and investigated. A review of your medical record has also been conducted.
> 
> You allege Dr. Casey McVea, our former Health Care Authority, falsely diagnosed you with Crohn disease and Hypertension with evil intent and this has caused you side effects and sickness from prescribing Colazal. You allege the prescribed Colazal and Hypertension medication has caused high cholesterol, back and head pain, injuries, cataracts, weakness, unconsciousness, numbness, Kussmaul breathing, infections, foot problems, skin damage, fluid, strokes, blackouts, weight loss, and Diabetes. You also allege unprofessional racial statements by Nurse Laura Buckley.
> 
> Dr. McVea did not diagnose you with Hypertension. You arrived at this facility with that diagnosis as noted in the transfer summary. Dr. McVea diagnosed you with Crohn disease on October 30, 2012. Colazal was prescribed on September 4, 2012. You have seen many Gastroenterology clinic doctors, had colonoscopies on more than one occasion, EGDs, and follow ups. Not one other doctor has disputed Dr. McVea's diagnosis in their notes.
> 
> You have made 153 sick calls and 45 doctor visits since your arrival at this facility, with evaluation by medical staff and review by the doctor each time. Also, you have been seen by the Gastroenterology clinic doctors, had tests, surgeries, etc. 27 times.
> 
> I find no support for your allegation of evil intent and no documentation stating his diagnosis is incorrect. You have provided no proof the medication Colazal is responsible for symptoms you have reported. It is apparent to me you have had more than adequate medical attention and care from the medical community. I find no proof of your statements regarding Nurse Buckley. No evidence has been provided to support your allegations. Your requested relief is denied.[6]

Plaintiff appealed the denial of his grievance to Step Two of the Administrative Remedy Procedure, but the Step Two response is not included in the records submitted to the Court.[7]

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's federal constitutional right to medical care is violated *only* if his "serious medical needs" are met

---

[6] Rec. Doc. 25.

[7] Presumably, the Step Two response is not included because it had not been issued at the time the records were provided to the Court. The certification accompanying the grievance records is dated December 18, 2017. However, the Step Two appeal was not received by prison officials until November 6, 2017, see Rec. Doc. 16-1, p. 1, and the officials then had forty-five days to issue a Step Two response, see La. Admin. Code Title 22, pt. I, § 325.

with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Plaintiff's medical records clearly demonstrate that he suffers from a number of serious medical needs. For example, those records reflect that he has suffered from gastrointestinal problems, manifested by abdominal pain and blood in his stool, for more than a decade.[8]

Nevertheless, in order to prevail in this lawsuit, plaintiff must additionally be able to show that his serious medical needs have been met with deliberate indifference. However, as the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. … [T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

---

[8] The Court notes that plaintiff filed a prior lawsuit in the Western District of Louisiana challenging the adequacy of the medical care he received for those conditions while incarcerated at the David Wade Correctional Center in Homer, Louisiana. That lawsuit was dismissed as frivolous. Joyner v. Fuller, Civ. Action No. 11-361, 2013 WL 4413327 (W.D. La. Aug. 14, 2013).

7

In the instant case, plaintiff's voluminous medical records show that he has been provided with extensive medical testing by medical specialists outside the prison and with continuous medical care inside the prison. The Court finds that those records disprove any allegation of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

That conclusion is not changed simply because plaintiff contends that he was misdiagnosed with Crohn's disease. Even if he was in fact misdiagnosed, "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." Domino, 239 F.3d at 756; accord Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007) (misdiagnosis of eye infection constituted mere malpractice and, therefore, was not actionable under § 1983); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004) (misdiagnosis of "gangrenous, ruptured appendix nearly resulting in plaintiff's death and 'loss of various body organs'" was not a constitutional violation but rather "a violation of a tort duty of care and must be pursued in state court").

Of course, the Court is aware that plaintiff is attempting to avoid that general principle by contending that he was *intentionally*, not merely *negligently*, misdiagnosed. However, there is simply no evidence to support that allegation. Rather, plaintiff's contention is based on nothing more than his allegation that a female doctor who performed a colonoscopy on him in 2013 or

2014 told him that, in her opinion, he did not in fact have – and had never had – Crohn's disease.[9] However, the Court has reviewed plaintiff's voluminous medical records and yet has located no documentation whatsoever indicating that any medical provider has ever concluded that plaintiff does not have, and never had, Crohn's disease.

Nevertheless, even if the Court assumes for the purposes of this decision that at some point some physician told plaintiff that she found no evidence of him having Crohn's disease, the mere fact that Dr. McVea reached a contrary conclusion is *not* evidence that he intentionally misdiagnosed plaintiff. Rather, as was noted by one court in considering a similar claim asserted by an incarcerated plaintiff, such an experience "is not so different from the experience of non-prisoners who undergo multiple and sometimes lengthy diagnostic tests and medical treatments for chronic medical conditions by medical personnel who are not always in agreement." Mathis v. Sudhir, No. 1:13-CV-187, 2014 WL 905823, at *7 (W.D. Mich. Mar. 5, 2014). Further, it is clear that such a disagreement among medical professionals is not evidence of deliberate indifference. See, e.g., Muse v. Warner, No. 93-2413, 1993 WL 543340 (5th Cir. Dec. 15, 1993) ("The disagreement in diagnosis between the initial doctor and the subsequent doctors does not equal denial of medical care or show deliberate indifference."); Evans v. Wright, Civ. Action No. 6:14cv566, 2015 WL 5766862, at *7 (E.D. Tex. Sept. 29, 2015) ("[A] disagreement between doctors does not equal denial of medical care or show deliberate indifference.").

Finally, the fact that Dr. McVea diagnosed plaintiff as having Crohn's disease, coupled with the fact that plaintiff's medical records contain no documentation contradicting that diagnosis, dooms his related claim that his rights are being violated by the medical professionals who

---

[9] At the Spears hearing, plaintiff stated that he did not know the identity of that doctor; however, in a subsequent filing, he identified the individual as "Patti Wascom MD." Rec. Doc. 16, p. 1. However, plaintiff's medical records identify no evaluation or treatment by such a doctor, although there is a reference to a Patti C. Wascom, who is identified as a certified family nurse practitioner.

9

continue to treat him for that condition. While plaintiff disagrees with the propriety of that treatment, an inmate's disagreement with his medical treatment does not constitute deliberate indifference absent exceptional circumstances. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference). Assessing the propriety of a course of treatment requires an exercise of medical judgment and, therefore, is an endeavor more appropriately left to the expertise of medical personnel than to judges. As a result, federal courts are reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is simply no basis whatsoever to engage in such second-guessing here.

For all of these reasons, plaintiff's claims concerning his medical diagnosis and treatment should be dismissed.

## B. Retaliation Claim

In amendments to his complaint, plaintiff also alleges in conclusory fashion that the defendants have retaliated against him for bringing this lawsuit.[10] With respect to such retaliation claims, the United States Fifth Circuit Court of Appeals has held:

---

[10] Although plaintiff's allegations regarding his retaliation claim are vague, he suggests that the retaliation has taken various forms, including such things as interfering with his incoming and outgoing mail. However, many of the documents he has attached to his various pleadings concern mail-processing issues that occurred long *before* this lawsuit was even filed. See, e.g., Rec. Doc. 8, pp. 13 and 51-54; Rec. Doc. 9-1, pp. 14, 16, 18, and 19. On those

> It is well established that prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts. To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (citation, internal quotation marks, and ellipsis omitted).

However, "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties, and so retaliation claims must be regarded with skepticism …." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 2001) (quotation marks omitted). Therefore, "trial courts must carefully scrutinize these claims." Id. To that end, courts require that inmates claiming retaliation either (1) produce direct evidence of retaliatory motivation or (2) allege a chronology of events from which retaliation may plausibly be inferred. Id. In the instant case, plaintiff has produced no direct evidence of a retaliatory motivation. Further, while it is obviously possible that the actions in question, whatever they were, were in retaliation for his litigation efforts, the mere fact that it is *possible* to infer a retaliatory motive from a chronology of events does not suffice. Rather, again, a plaintiff's retaliation claim is actionable only if it is *plausible* to infer a retaliatory motive based on the sequence of events. Here,

---

occasions occurring *after* the suit was filed, prison officials provided facially non-retaliatory reasons for their actions. For example, numerous pieces of mail were refused or confiscated by officials because the mailings violated prison regulations. See, e.g., Rec. Doc. 8, p. 55; Rec. Doc. 9-1, pp. 20 and 21; Rec. Doc. 10, pp. 9-11; Rec. Doc. 11-1, pp. 2 and 3; Rec. Doc. 17, pp. 10-18. A prisoner cannot convert an unfounded challenge to a facially valid action into a constitutional claim simply by adding a barebones allegation that a prison official had a retaliatory motive. See, e.g., Hill v. Stephens, Civ. Action No. 08-5233, 2009 WL 1808596, at *4 (E.D. La. June 18, 2009).

Plaintiff also alleges that medications were not refilled. When plaintiff asserted that same complaint to prison officials, his grievance was rejected because he failed to specify which medications were not refilled. See Rec. Doc. 8, p. 8. He has repeated that same error here. Moreover, plaintiff's medical records reflect that he is on numerous medications, and those medications have been discontinued or changed over time for various reasons. Without more, a vague allegation that an unspecified medication was not refilled on an unspecified occasion is insufficient to state a cognizable retaliation claim.

Nevertheless, even aside from these defects in plaintiff's retaliation claim, the claim independently fails for the reasons explained in this opinion.

the Court simply cannot say that plaintiff's allegations cross the line from possibility to plausibility for the following reasons.

First, the mere fact that an action was taken against a prisoner after he filed a lawsuit is not alone sufficient to constitute a chronology of events from which one can infer a retaliatory motive. Without more, the connection between the two events is simply "too tenuous to support a claim of retaliation." Thunderhorse v. Pierce, 418 F. Supp. 2d 875, 898 (E.D. Tex. 2006), aff'd in part, vacated in part on other grounds, 232 Fed. App'x 425 (5th Cir. 2007); accord Armenta v. Chapman, 371 Fed. App'x 452, 456 (5th Cir. 2010); Norman v. Prince, Civ. Action No. 10-0605, 2011 WL 6369977, at *6 (M.D. La. Nov. 3, 2011), adopted, 2011 WL 6369840 (M.D. La. Dec. 19, 2011); Allen v. Holden, Civ. Action No. 10-753, 2011 WL 4737416, at *6-7 (M.D. La. Aug. 29, 2011), adopted, 2011 WL 4729831 (M.D. La. Oct. 5, 2011). To hold otherwise would allow an inmate to file suit and "then forever after claim that any adverse actions by prison officials were necessarily motivated by retaliatory intent from the prior legal action." Thunderhorse, 418 F. Supp. 2d at 898.

Second, even if the Court assumes for the purposes of this opinion that the instant defendants were aware of this lawsuit, one cannot reasonably infer that the lawsuit left them in such a fit of pique that they would resort to unlawful retaliation. On the contrary, penal officials are routinely sued by disgruntled inmates who feel that they have been treated unfairly – such lawsuits simply come with the job. Of course, "it is conceivable that a *particular* lawsuit might anger an official, such as if the lawsuit required substantial resources to defend or resulted in liability or public condemnation …." Spikes v. Seal, Civ. Action No. 16-2794, 2016 WL 8469636, at *4 (E.D. La. Nov. 23, 2016), adopted, 2017 WL 959392 (E.D. La. Mar. 13, 2017). However, that cannot be plausibly inferred here. As this lawsuit is still in the preliminary screening stage,

the defendants have not yet been required to take *any* action to defend against it, and there has been *no* judicial finding *adverse* to them. Accordingly, there is no reason whatsoever to infer that this lawsuit motivated them to engage in retaliatory actions. See Allen v. St. Tammany Parish, Civ. Action No. 17-4091, 2018 WL 558503, at *6 (E.D. La. Jan. 1, 2018), adopted, 2018 WL 537495 (E.D. La. Jan. 24, 2018).

In summary, plaintiff's retaliation claim is actionable *only if* the defendants were motivated by a desire to punish plaintiff for exercising a specific constitutional right. Here, plaintiff has produced no direct evidence of such a motivation, and a retaliatory motive cannot be inferred merely from the fact that plaintiff filed this lawsuit. Rather, plaintiff's allegations of a retaliatory motive in this case are wholly speculative and conclusory, and they therefore do not suffice to survive the screening process mandated by federal law. See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 Fed. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation").

### III. Motions for a Preliminary Injunction

Plaintiff has also filed two motions for a preliminary injunction. Rec. Docs. 20 and 24. Under the law of this Circuit, a plaintiff must make a clear showing that his case satisfies the following four criteria before he can receive a preliminary injunction: (1) a substantial likelihood exists that he will succeed on the merits of his claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. See Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997); see also

Ingebresten v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir. 1996); Doe v. Duncanville Independent School District, 994 F.2d 160, 163 (5th Cir. 1993); Holland American Insurance Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985).  He must satisfy all four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction.  See Mississippi Power & Light v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

Because plaintiff's claims should be dismissed for the reasons already explained, plaintiff cannot show that there is a substantial likelihood that he will succeed on the merits of his claims. Therefore, the motions for a preliminary injunction should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's motion for partial voluntary dismissal, Rec. Doc. 18, be **GRANTED** and that his claims against Laura Buckley, Theresa Knight, Dr. Robert Cleveland, Ernestine Smith, Kenton Smith, Cheryle Barber, Josh Miley, and Judy Tullus be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's claims against the remaining defendants be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that plaintiff's motions for a preliminary injunction, Rec. Docs. 20 and 24, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ninth day of July, 2018.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**